# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2439 | **DATE** | 12/1/2004 |
| **CASE TITLE** | Winston vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] As stated in the attached Memorandum Opinion and Order, defendant's motion for summary judgment [40-1] is denied. Status hearing set for 12/16/04 at 9:00 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 52 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/1/2004 | |
| KF | courtroom deputy's initials | | date mailed notice KF mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHANNON WINSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 2439 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JOHN POTTER, Postmaster, ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
**DEC -2 2004**

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Shannon Winston ("Winston") filed this action pursuant to the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, alleging disability discrimination arising out of his termination from the United States Postal Service ("the Postal Service"). The Postal Service filed a motion for summary judgment. For the reasons set forth below, the Postal Service's motion for summary judgment is denied.

## Background

### History of Winston's Knee Condition

Winston injured his right knee in 1992 while on active duty with the United States Navy. In August 1994, he had surgery on his right knee and was subsequently placed on limited duty status. As a result of continued problems with his right knee, in November 1996, the Naval Medical Board found that Winston was not fit for full duty and would not be able to perform his duties shipboard without significant complaints of pain. The Medical Board, therefore, recommended that Winston be discharged from the Navy. Winston was

52

discharged from the Navy because of disability in August 1997. He received disability severance pay of approximately $19,525.

*Wintson's Employment with The Postal Service*

In March 1998, Winston applied for a job as a mail carrier with the Postal Service's facility in Joliet. Winston filled out an application for employment, PS Form 2591. On that form, Winston denied receiving compensation based on military service. Winston also submitted a DD Form 214 to the Postal Service along with his application prior to his hire. Winston's DD Form 214 reflects that he was discharged from the Navy because of a disability and that he received a disability severance payment.

On March 27, 1998, a physician employed by the Postal Service examined Winston as a precondition for his employment. As part of his examination, Winston filled out PS Form 2485, "Medical Examination & Assessment." On the PS Form 2485, Winston stated: (1) that he had never needed a special or restricted job assignment due to illness, injury or physical impairment; (2) that he had an operation, but he did not offer any details; (3) that he had never received compensation or a cash settlement from an employer, including the government, for injury or disease; (4) that his right knee had been x-rayed in 1994 but he omitted any reason(s) for the x-ray; (5) that he had never been discharged from military service because of any physical or mental reasons; and (6) that he regularly exercised. Winston failed to answer a question on PS Form 2485 asking whether he had ever had arthritis. Winston also failed to answer a question asking whether he had ever filed a disability claim or received compensation from the U.S. government.

The Postal Service's examining physician found that Winston presented no significant medical findings and that he was not limited or restricted in performing the duties

2

expected by the Postal Service. The examining physician also found that Winston presented no medical risk/restriction and was medically qualified for a job as a mail carrier, without accommodation.

Winston began working in Joliet as a mail carrier in May 1998. During his employment with the Postal Service, Winston was disciplined on several occasions for being late, taking unscheduled sick leave and for being AWOL on two occasions. Winston was informed that failure to correct his irregular behavior could result in termination. On August 20, 1999, Winston requested light duty until August 25, 1999.[1] On August 25, 1999, a VA physician diagnosed Winston with patella tendinitis of the *left* knee and indicated that Winston's walking requirements at work should be reduced to three hours per day. The parties dispute whether the Postal Service actually decreased Winston's walking requirements for three weeks.

*Winston's November 1999 Right Knee Injury*

On November 10, 1999, Winston reported to his superiors that he injured his *right* knee the previous day at work. An examining physician at Saint Joseph Medical Center in Joliet diagnosed Winston as having a right knee sprain. On November 12, 1999, Winston's personal physician examined his right knee and recommended that he apply for limited duty at work, with restrictions of limited walking and no squatting or climbing. Winston's physician filled out Department of Labor Form CA-17 in order for Winston to request a limited duty assignment.

---

[1] Light duty applies to Postal Service employees who suffered an injury outside of work. Limited duty applies to Postal Service employees who suffered an injury during work.

3

On November 15, 1999, Winston filed a worker's compensation claim. Postmaster Lolita Rice ("Ms. Rice") sent a letter to the injury compensation manager that same day requesting a denial of Winston's claim. Ms. Rice testified that she wrote this "controversion letter" because after reviewing Winston's file, she determined that he had a pre-existing injury. Despite Ms. Rice's letter, Winston's worker's compensation claim was accepted. Ms. Rice then asked the Postal Inspection Service to initiate a worker's compensation fraud investigation into Winston's alleged injury. The Postal Inspection Service subsequently began that investigation.

Also on November 15, 1999, Winston requested counseling from an EEOC counselor due to the Postal Service's failure to provide appropriate claim forms and the Postal Service's failure to treat his injury as an on-the-job injury. Winston never filed a formal complaint with the EEOC.

Winston accepted a 30-day limited duty job offer designed to accommodate his right knee injury on November 16, 1999. Winston's tasks were limited to answering phones, updating forms, marking Loop mail and other desk work. On December 6, 1999, Winston's personal physician recommended that he be kept in a "sit-down" job with no squatting, or climbing and only limited walking. On December 27, 1999, Winston accepted another 30-day limited duty assignment. In early January 2000, Winston's personal physician examined him again and noted that he should avoid walking for exercise.

*Winston's Termination and The Administrative Review Process*

As a part of the worker's compensation fraud investigation, Winston was interviewed by Postal Inspectors in February 2000. The Postal Inspectors prepared an investigative memorandum regarding Winston's claimed knee injuries. The memorandum detailed

4

Winston's failure to disclose pertinent information regarding his knee condition and disability on his pre-employment forms. The Inspectors informed the Postmaster that Winston had received extensive medical treatment for his right knee starting in 1992. The Inspectors further informed the Postmaster that Winston had been employed with the agency approximately eighteen months; that he had used all but seventeen hours of his allowed sick leave; and that he had been on limited duty status for about ninety days (since his fall in November 1999). According to the Inspectors, Winston admitted that he had received a substantial disability severance payment when he was discharged from the Navy and that he continues to receive a monthly disability check from the government.

On February 29, 2000, Winston was interviewed by the Postmaster. The purpose of the interview was to give Winston an opportunity to explain his pre-hire statements and omissions about his right knee condition and his claim that he had never received disability payments from the government. Winston failed to offer any explanation.

On March 6, 2000, the Postal Service gave Winston a formal advance Notice of Proposed Removal. The notice was based on Winston's alleged false statements about his right knee and his receipt of a disability severance payments. Winston was informed that he could respond to the notice but he did not do so.

On March 21, 2000, the Postal Service notified Winston that he was terminated as of April 7, 2000. The Notice of Removal set forth Winston's alleged misconduct. The notice informed Winston that he had a right of appeal to the Merit Systems Protection Board ("MSPB"). Winston timely appealed his termination to the MSPB.

On his appeal form, Winston stated that the agency action he wished to appeal was his removal from the Postal Service. Winston explained that the Postal Service's decision

should be reversed "[b]ecause all information physically and verbally was provided upon hiring." Winston also alleged that the Postal Service discriminated against him because of a disability. In particular, Winston claimed that he was denied certain claim forms by Ms. Rice and that there was "illegal retrieval of information" about his second job after he refused to sign a waiver for the information.

The MSPB held a hearing on May 25, 2000. On May 31, 2000, the administrative judge affirmed the Postal Service's decision to terminate Winston because the Postal Service established that Winston had failed to disclose pertinent information about his medical history and his receipt of disability payments on his pre-employment forms. Winston appealed the initial decision but his petition for review was denied because he presented no new evidence. Winston was not represented by counsel during any stage of the proceedings before the MSPB. Winston timely filed his complaint in the district court on April 6, 2001.

**Legal Analysis**

A. *Standard of Review*

A final decision of the MSPB is ordinarily reviewable only by the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1). However, when a plaintiff presents an employment discrimination claim under Title VII, the Equal Pay Act, the Rehabilitation Act, or the Age Discrimination in Employment Act, the plaintiff may file a civil action in an appropriate United States district court. 5 U.S.C. § 7703 (b)(2); *Richards v. General Servs. Admin.*, 1993 U.S. Dist. LEXIS 9984, *13 (N.D. Ill. 1993). In such an action, the plaintiff is entitled to de novo review of the facts underlying the alleged

employment discrimination. Here, Winston has alleged a discrimination claim under the Rehabilitation Act. Therefore, Winston is entitled to de novo review of the facts underlying the alleged employment discrimination. *Id.*

B.  *Failure to Exhaust Administrative Remedies*

The Postal Service contends that summary judgment is appropriate because Winston failed to exhaust his administrative remedies. In response, Winston argues that the law of the case doctrine precludes the Postal Service from rearguing that he failed to exhaust his administrative remedies. Judge Gottschall previously denied the Postal Service's motion to dismiss on failure to exhaust grounds. However, the only facts before Judge Gottschall at that time were two opinions from the MSPB, an application for appeal from the MSPB's initial decision and a completed pre-complaint EEOC form. Judge Gottschall found that without additional evidence, she could not conclude that Winston failed to exhaust his administrative remedies.

Generally, a ruling that evidence was insufficient to support a finding is the type of ruling that establishes the law of the case. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). Here, however, there is more evidence before the Court, such as the transcript of the MSPB proceeding. Because there is additional evidence before us and because we are required to conduct a de novo review, we find that the law of the case doctrine does not preclude the Postal Service from arguing that Winston failed to exhaust his administrative remedies. *See Wilder*, 153 F.3d at 803 (recognizing that new evidence can furnish compelling grounds for departure from a previous ruling).

Nevertheless, the Postal Service still has not met its burden of proof on the affirmative defense that Winston failed to exhaust his administrative remedies. The Postal

7

Service contends that for the first time, in his amended complaint, Winston alleges that the Postal Service failed to accommodate his disability when it refused to allow him to work a mounted-only route. The Postal Service argues that Winston did not exhaust his administrative remedies because the failure to accommodate claim was not raised before the MSPB and because Winston did not file a formal complaint with the EEOC.[2]

However, on Winston's MSPB appeal form, he contended that the Postal Service discriminated against him because of his disability in connection with his termination. Additionally, during the hearing before the MSPB and in his petition for review of the initial decision, Winston argued that the Postal Service engaged in disparate treatment.[3] Winston's current failure to accommodate allegations are further evidence of his claim of disparate treatment and his claim that he was fired because of his disability. Both of these claims were raised during the MSPB proceedings.

Furthermore, Winston is not limited by the administrative record here because he alleged a discrimination claim under the Rehabilitation Act. Instead, he has a right to de novo review of the facts underlying the alleged discrimination and he is entitled to introduce new evidence, such as evidence of the Postal Service's failure to accommodate his disability. *Richards*, 1993 U.S. Dist. LEXIS 9984, *13; *Wiggins v. United States Postal Service*, 653 F.2d 219, 221 (5th Cir. 1981). Based on the foregoing, the Court finds that the Postal Service has not met its burden of proof on the affirmative defense that Winston

---

[2] Winston concedes that he did not file a formal complaint with the EEOC.

[3] While Winston failed to explain the disparate treatment in detail, he was not represented by counsel at that juncture.

8

failed to exhaust his administrative remedies. Consequently, summary judgment on the Postal Service's affirmative defense is not warranted.

C. *Winston's Rehabilitation Act Claim*

The Rehabilitation Act provides that the Americans with Disabilities Act ("ADA") standards are to be applied to determine whether the Rehabilitation Act has been violated. *See* 29 U.S.C. § 794(d). To establish disability discrimination under the ADA, the plaintiff must show: (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of his job either with or without reasonable accommodation; and (3) that he suffered from an adverse employment action because of his disability. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). The Postal Service argues that Winston cannot show that he is qualified to perform the essential functions of his job as a mail carrier and that he has offered no evidence to show that he was fired because of his disability.

1. Winston's Qualifications

The Postal Service argues that several physicians found that Winston's pre-existing physical condition required a sit-down job. However, Winston has offered evidence to the contrary. For instance, the Postal Service's own pre-hire examining physician found that Winston had no medical restrictions and was medically qualified for the job. Further, prior to November 1999, Winston worked as a mail carrier for eighteen months. It was not until he aggravated his right knee condition that he required limited duty.[4] Employers are required to make limited duty positions available to disabled employees who are recovering

---

[4] The Court recognizes that Winston may have been on light duty for a left knee condition for a few weeks in August or September 1999 but the record is unclear on this issue.

9

from temporary restrictions and who are otherwise qualified to participate. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 697 (7th Cir. 1998). Once an employer places an injured employee on limited duty, the employee's qualifications must be measured in relation to the limited duty position occupied, not the position formerly held. *Id.* at 697. When Winston was placed on limited duty as a result of his right knee injury, he was able to perform the essential functions of his limited duty assignment of answering phones and sorting mail.

Furthermore, Ms. Rice admitted that Winston was an average employee who usually performed the duties asked of him. She also testified that Winston was charged with omission of information, not an inability to do his job and that he was fired because of his omission of information. Winston's supervisor, Roxanne McCarville ("Ms. McCarville"), testified that Winston's termination had nothing to do with his job performance. Additionally, contrary to the Postal Service's suggestion, the fact that Winston may have taken unscheduled sick leave or was AWOL on a few occasions does not prove that he could not perform the essential functions of his job. At the very least, there is a question of fact with respect to whether Winston is qualified to perform the essential functions of a mail carrier with or without an accommodation.

2.  Adverse Employment Action

To establish disability discrimination, the plaintiff must show that he suffered from an adverse employment action because of his disability. *Kersting*, 250 F.3d at 1115. Winston contends that he was fired because of his disability and that the Postal Service's purported reason for firing him, his failure to disclose his knee condition, was pretext. The Postal Service argues that Winston has no evidence that he was fired because of his

10

disability and that the Postal Service's decision to terminate Winston was based solely on the false statements he made to become a mail carrier. As the Postal Service correctly points out, Winston failed to explain why he answered certain questions on his pre-hire application forms incorrectly or left them blank.

However, Winston has offered some evidence to support his claim that the Postal Service's stated reason for firing him was pretext. The Postal Service's investigation into Winston's knee injury purportedly began as a worker's compensation fraud investigation because according to Ms. Rice, she knew that Winston had a prior knee injury. Ms. Rice offered a variety of explanations as to how she became aware of Winston's prior knee injury. At the MSPB hearing, Ms. Rice testified that she discovered Winston's knee injury was pre-existing upon reviewing the forms in Winston's file including DD Form 214. Winston's DD Form 214 does not refer to his knee injury. Ms. Rice subsequently admitted that the forms she had access to, Winston's DD Form 214 and the first and last page of PS Form 2485, did not reveal his prior knee injury.

At a later point in the MSPB hearing, Ms. Rice testified that she may have learned of Winston's pre-existing knee injury from a conversation she had with him during which he told her that he was a "parachuter" in the military and that he always had knee problems. Winston testified that he was a radioman in the Navy, that he never jumped out of airplanes and that he never told Ms. Rice that he jumped out of airplanes or that he had knee problems. At her deposition, Ms. Rice testified that she did not recall a conversation with Winston about being a parachuter in the military, and "obviously, it was someone else." Ms. Rice instead stated that she learned of Winston's pre-existing injury because

he had told his supervisor, Ms. McCarville, that he had a knee injury from the military. However, Ms. McCarville testified that she did not recall ever having such a conversation.

Ms. Rice also testified that she became suspicious of Winston's November 1999 injury because she remembered that he had claimed an injury in September 1999. Ms. Rice stated that she asked for Winston's PS Form 2485 after his November 1999 injury in order to find out if the injury was the same injury that he claimed in September 1999. She later admitted however, that Winston's PS Form 2485 would not have provided any information about Winston's September 1999 injury. Additionally, Inspector Scheibenreif of the Postal Inspection Service testified that he began investigating Winston for worker's compensation fraud because either Ms. Rice or Ms. McCarville claimed that Winston was working outside his limited duty restrictions at Pizza Hut.

Based on the foregoing, a reasonable trier of fact could find that Ms. Rice failed to offer a reasonable explanation as to why she became suspicious of Winston's injury, why she wrote a "controversion letter" to the injury compensation manager, and why she asked the Postal Inspection Service to investigate Winston's injury. Accordingly, there are questions of fact with respect to whether the Postal Service was looking for a reason to fire Winston and consequently, whether the Postal Service's stated reason for firing Winston was pretext.

Furthermore, Winston claims that he provided the Postal Service with all the pertinent information about his knee condition and his disability severance payments prior to being hired. He provided the Postal Service with his DD Form 214 prior to being hired. This form indicates that he was discharged from the Navy because of a disability and received a disability severance payment. On his PS Form 2485, Winston informed the

Postal Service that his right knee was x-rayed in 1994 and that he had had an operation in the past. Winston also testified that he informed the examining physician of his previous knee injury and that he could not have hidden the injury due to the five-inch scar on his right knee. The scar was noted by several other physicians.

The Postal Service has offered no evidence to controvert Winston's testimony in this regard. During the investigation of Winston, no one from the Postal Service contacted the pre-employment examining physician to determine if Winston actually informed the physician of his knee condition. Moreover, Inspector Scheibenreif admitted that if Winston discussed his knee injury with the examining physician and submitted his DD Form 214 prior to being hired, the Postal Service would have had in its custody all of the information that Winston failed to provide on his PS Form 2485.

Because Ms. Rice's explanation as to why the Postal Service began investigating Winston's injury is inconsistent at best and because Winston purportedly provided all of the pertinent information about his knee condition to the Postal Service prior to being hired, a reasonable trier of fact could find that the Postal Service's stated reason for firing Winston was pretext. Therefore, the Court finds that Winston has demonstrated that a question of fact exists with respect to whether he suffered from an adverse employment action because of his disability.

**Conclusion**

The Postal Service has failed to demonstrate the absence of a genuine issue of material fact. To the contrary, the Court finds that there are questions of fact with respect to whether Winston is qualified to perform the essential functions of his job and whether he suffered from an adverse employment action because of his disability. Additionally, the

Postal Service has not met its burden of proof on the affirmative defense that Winston failed to exhaust his administrative remedies. Consequently, the Postal Service's motion for summary judgment is denied. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: December _1_, 2004